IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

James Brockman, Jr.,           )
Wade Hampton of Greer, LLC;    )
Suzuki of Greer, LLC; and      )
                               )          C/A No. 6:11-3381-TMC
                  Plaintiffs,  )
                               )
       v.                      )          **ORDER**
                               )
                               )
American Suzuki Motor          )
Corporation,                   )
                               )
                  Defendant.   )
_____

    This matter is before the court on Defendant American Suzuki Motor Corporation's ("Defendant's") Motion for Judgment on the Pleadings pursuant to Rule 12(c), Fed. R. Civ. P. (Dkt. # 17). Plaintiffs James Brockman, Jr. ("Brockman"), Wade Hampton of Greer, LLC, and Suzuki of Greer, LLC, (collectively referred to herein as "Plaintiffs") filed a response opposing the motion (Dkt. # 21) and Defendant filed a reply (Dkt. # 23). This motion is now ripe for resolution. For the reasons set forth below, the court grants the motion in part and denies the motion in part.

## I. Facts/Background

    In their Complaint, Plaintiffs allege the following. Between 2007-2009, Plaintiff Brockman signed letters of intent with Defendant regarding a Suzuki franchise in Greer, South Carolina. (Compl. ¶ 7). Based upon these letters of intent, Brockman formed Wade Hampton of Greer, LLC, to purchase and lease land and construct a dealership to be built to Defendant Suzuki's specifications and Plaintiff Suzuki of Greer, LLC, to operate the Suzuki dealership. *Id.* Plaintiffs allege that they purchased and leased land and

obtained an $8 million loan to construct the dealership and a $2 million floor plan line of credit.  (Compl. ¶ 8).

Plaintiffs allege that in 2007, Defendant encouraged Joe Gibson's Autoworld ("Joe Gibson"), a local Suzuki dealer, to use no or low money down and no or low payment marketing and advertising referred to as "Drive a Susuki" or "Drive for Life" programs. (Compl. ¶¶ 10, 14).  Under these programs, consumers were informed that for ten to twelve months they would receive rebate checks from Joe Gibson's to cover their monthly payments and thereafter consumers could trade in their Suzukis for new Suzukis from Joe Gibson's and retain similar payment terms. (Compl. ¶¶ 16-18).  Consumers were also informed that they would receive additional rebate checks once they traded in vehicles and that they would not be responsible for any loan obligation in purchasing these Suzuki vehicles.  (Compl. ¶¶ 18, 23).

In reality, the promotional term was for ten months to one year, after which time the consumer had to reapply for the offer and most consumers were unable to obtain refinancing.  (Compl. ¶ 24).  These consumers were then required to make full payments on the vehicles, some as high as $700 per month.  (Compl. ¶ 25).

As a result, many consumers' cars were repossessed, many consumers filed lawsuits, the South Carolina Attorney General's Office began a highly publicized investigation, and Joe Gibson's filed for bankruptcy on July 16, 2008.   (Compl. ¶ 27; Answer ¶¶ 19, 27-28).   Plaintiff alleges that these events drastically reduced the consumer's confidence in Suzuki vehicles and once Plaintiffs had completed construction of the Suzuki dealership, they were unable to obtain the floor plan line of credit required by Suzuki.  (Compl. ¶¶  28, 29).   Plaintiffs allege they were finally able to obtain a $500,000 line of credit, but then Suzuki increased the minimum amount it would accept

2

for the floor plan line of credit and this effectively terminated the franchise. (Compl. ¶ 29).[1] Plaintiffs allege that they are left with land and a brand new dealership that is practically worthless because it was built to Suzuki specifications and further they cannot sell it to another Suzuki dealer because no one will enter the Greenville/Spartanburg market because of the negativity created by the Joe Gibson/Suzuki advertising campaign. *Id*.

In its Answer, Defendant contends that Plaintiffs were able to secure the required floor-plan line of credit and they became an authorized Suzuki dealer on February 26, 2010. (Answer ¶¶ 19, 29). Defendant further alleges that Plaintiffs sold the dealership to BSAC Suzuki on May 20, 2010. (Answer ¶¶ 19, 29). Defendant alleges that Plaintiffs then sought to re-purchase the Suzuki of Greer dealership from BSAC in 2011. (Answer ¶ 29). Defendant alleges Plaintiffs entered into a conditional buy/sell agreement with BASC on May 27, 2011, but because Plaintiffs were unable to meet the increased floor plan line of credit which was applicable in 2011, Defendant denied the transfer. *Id*.

Plaintiffs allege six causes of action for unfair methods of competition and unfair or deceptive acts or practices based upon violations of the South Carolina Regulation of Manufacturers, Distributors and Dealers Act ("Act"), S. C. Code Ann. § 56-15-10 et. seq. Specifically, Plaintiffs allege violations of §§ 56-15-40(1); 56-15-40(3)(d); 56-15-40(3)(e); 56-15-40(3)(f); 56-15-45(B)(2); and 56-15-90. Plaintiffs further allege several common law claims: unjust enrichment, negligence, breach of contract, and breach of contract with fraudulent intent. Plaintiffs are seeking actual and punitive damages, double the amount of damages pursuant to S.C. Code Ann. § 56-15-110, pre and post judgment interest, and

---

[1]In its Answer, Defendant alleges the minimum floor plan line of credit was originally $1.5 million, but this line of credit was subsequently lowered to $500,000 and Plaintiffs were able to obtain this line of credit. (Answer ¶ ¶7-9).

reasonable attorney's fees and costs. (Compl. 21).

## II. Applicable Law

Rule 12(c) allows a party to move for judgment on the pleadings, "after the pleadings are closed—but early enough not to delay trial. . . ." Fed.R.Civ.P 12(c).    In considering a  motion for judgment on the pleadings under Rule 12(c), the court applies the same standard as a motion to dismiss under Rule 12(b)(6).   *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).   "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."   *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).

The Federal Rules of Civil Procedure "require[] only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted).   A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id*. at 555 (citations omitted). The complaint must contain factual matter which, if accepted as true, would "state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*).   A claim is facially plausible when a plaintiff pleads sufficient factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*.

When considering a motion for judgment on the pleadings, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the

4

plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). The court is not, however, required to accept as true any legal conclusions contained in the complaint. *Ashcroft v. Iqbal,* 556 U.S. at 678. However, "[u]nlike on a Rule 12(b)(6) motion . . . on a Rule 12(c) motion the court may consider the Answer as well." *Alexander v. City of Greensboro,* No. 1:09–CV–293, 2011 WL 3360644, at *2 (M.D.N.C. August 3, 2011). The "factual allegations in the answer are taken as true to the extent they have not been denied or do not conflict with the complaint." *Farmer v. Wilson Hous. Auth.,* 393 F.Supp.2d 384, 386 (E.D.N.C. 2004) (internal citation and quotation marks omitted); *Jadoff v. Gleason*, 140 F.R.D. 330, 331 (M.D.N.C. 1991).

For the "purposes of this motion Defendant cannot rely on allegations of fact contained only in the [A]nswer, including affirmative defenses, which contradict [the][C]omplaint" because Plaintiff was "not required to reply to Defendant's [A]nswer, and all allegations in the [A]nswer are deemed denied." *Jadoff,* 140 F.R.D. at 332. *See* Fed.R.Civ.P. 8(b)(6) ("If a responsive pleading is not required, an allegation is considered denied or avoided."). Furthermore, in "determining a motion for judgment on the pleadings, the court may consider documents incorporated by reference in the pleadings." *Farmer*, 393 F.Supp.2d at 386 (internal citation and quotation marks omitted). However, documents attached to the answer are part of the pleadings for Rule 12(c) purposes, and may be considered without converting a motion for judgment on the pleadings into a motion for summary judgment, only if the documents are central to the plaintiff's claim and the authenticity is not challenged. *Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir. 2002).

### III. Discussion

In its Motion for Judgment on the Pleadings, Defendant contends that all of

Plaintiffs' claims are implausible as a matter of law, Plaintiffs' claims under the Act fail as a matter of law, and Plaintiffs' common law claims are barred by the statue of limitations and many fail to state a viable cause of action. Plaintiffs contend Defendant's motion is premature and based upon a false assumption. Plaintiffs dispute Defendant's contention that Plaintiffs were not a Suzuki dealer at the time of the alleged events.  Plaintiffs argue that whether they were a dealer is a factual dispute which must be resolved in their favor in considering this motion, and, therefore, Defendant's motion should be denied. Alternatively, Plaintiffs request leave to amend their complaint.

### A. Plausibility of Plaintiffs' Claims against Defendant

Defendant contends that Plaintiffs' claims are merely conclusory allegations which are nonsensical and implausible as a matter of law and all of the Plaintiffs' claims should be dismissed.  Defendant contends Plaintiffs were not Suzuki dealers in 2007-2008 when the Joe Gibson advertising scheme took place and, therefore, it is implausible that Plaintiffs were harmed by the advertising.  (Def.'s Mem. Supp. Mot. at 6).  Defendant states that until February 26, 2010, Plaintiffs did not enter into a dealership agreement with Defendant, operate a Suzuki dealership, or attempt to sell any Suzuki vehicles.  *Id*. at 7.    Furthermore, Defendant contends that its "alleged involvement in these advertisements is also implausible because no manufacturer would intentionally poison the marketplace for its own products."  (Def.'s Mem. Supp. Mot. at 7).  Plaintiffs contend Defendant's entire argument requires the Court to assume a disputed fact in favor of the Defendant - that Plaintiffs were not a Suzuki dealer when the advertisements with Joe Gibson were running.  Plaintiffs contend they were a Suzuki dealer at this time and when the allegations are viewed in Plaintiffs' favor, their claims are plausible and satisfy the pleading requirements.  (Pls.' Mem. Opp. Mot. ¶ 14).

6

Courts are entitled to dismiss claims when the pleadings are "conclusory" and "do not plausibly establish" that the alleged misconduct occurred. *Iqbal*, 556 U.S. at 681. "[I]t is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id*. When adjudicating a motion to dismiss, a court is required to accept as true even "unrealistic or nonsensical" allegations. *Iqbal*, 129 S.Ct. at 1951. At this stage of the litigation, the question is whether the facts as pled plausibly suggest a claim, rather than whether the facts themselves are plausible. *Id*.

With these principles in mind, the court finds the Complaint in its entirety is not conclusory. Plaintiffs have alleged sufficient facts to plausibly suggest claims for relief in accordance with *Iqbal*. Accordingly, the court will not dismiss the Complaint based upon Defendant's argument that the Complaint does not satisfy the *Iqbal* plausibility requirement. The court now turns to Defendant's remaining arguments.

**B. Plaintiffs' Claims under the Act**

Initially, the court must address Defendant's argument that Plaintiffs do not have standing to assert any claim under the Act because Plaintiffs are not members of the class meant to be protected by the Act - dealers. Defendant specifically argues Plaintiffs were not a Suzuki dealer at the time of any alleged misconduct. Plaintiffs contend that they were a dealer or alternatively a prospective dealer or potential franchisee.

The Act provides that "any person who shall be injured in his business or property by reason of anything forbidden in this chapter may sue therefor . . . ." S.C. Code Ann. § 56-15-110(1). Neither the South Carolina Supreme Court nor the South Carolina Court of Appeals has addressed this issue. Citing *Southeast Toyota Distr., LLC v. Jim Hudson Superstore, Inc.*, 693 S.E.2d 33, 37 (S.C.Ct. App. 2010), Defendant states that the South

7

Carolina Court of Appeals has held that the intent of the Act is to protect "consumers and dealerships from aggressive practices by distributors and manufacturers and from excessive intrabrand competition." However, in that case, the court was addressing only one section of the Act and, therefore, the court actually held that S.C. Code Ann. § 56-15-46 is intended to protect consumers and dealerships, not the entire Act. *Id.*

Plaintiffs counter that Defendant's standing argument fails because it is based on the assumption that Plaintiffs were not a Suzuki dealer. The court agrees with Defendant - Plaintiffs were not a dealer when the Joe Gibson advertising scheme took place. This is not an assumption. Rather, it is based upon the undisputed fact that the letters of intent specifically state they do not appoint Plaintiffs as a dealer and the dealership agreement was not entered into until February 26, 2010, well after the Joe Gibson advertising had concluded. (Dkt. # 13-1, 13-2, 13-3, 13-4, and 13-6). The letters of intent and dealer agreement are attached to the Answer and can be considered on this motion on the pleading as they are central to Plaintiffs' claims and their authenticity has not been challenged by Plaintiffs. Further, Plaintiffs' own allegations regarding Defendant's actions in refusing to approve Plaintiffs as a franchisee establish Plaintiffs were not a franchisee at that time.

Plaintiffs then contend that, even if they were not a dealer or franchisee at the time of the alleged misconduct, they were a potential franchisee and have standing under the Act as a prospective franchisee or dealer. (Pls.' Mem. Opp. Mot. ¶ 18). Plaintiffs cite to two cases from other jurisdictions which they contend are directly on point and controlling. (Pls.' Mem. Opp. Mot. ¶ 20).[2] Defendant also cites to cases from other jurisdiction in

---

[2]The court notes these cases are definitely not controlling as they are from other jurisdictions and are construing other states' laws. *McKinney v. Bd. of Trs. of Md. Comty. Coll.*, 955 F.2d 924, 927 (4th Cir.1992) (holding district court opinions from other circuits,

8

support of its argument.

Here, the court does not see any reason to resort to any case law from other jurisdictions in construing the Act. The primary rule of statutory construction is to ascertain and give effect to the intent of the General Assembly. *Beaufort Cnty. v. S.C. State Election Comm'n*, 718 S.E.2d 432 (S.C. 2011). Unless there is something in the statute requiring a different interpretation, the words used in a statute must be given their ordinary meaning. *Mid–State Auto Auction of Lexington, Inc. v. Altman*, 476 S.E.2d 690 (S.C. 1996). When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning. *Edwards v. State Law Enforcement Div.*, 720 S.E.2d 462, 465 (S.C. 2011) ("When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning."). The Act specifically provides that *any person* who is injured in his business or property by reason of anything forbidden in the Act may bring an action. The court finds the language of § 56-15-110 to be unambiguous and the broad language demonstrates the legislature's intent to include any person who has been injured in his business or property. Had the legislature wanted to limit standing to only franchisees, it could have done so. Accordingly, the court concludes that any person, including a potential franchisee, has standing to bring a claim under the Act.

### 1) Arbitrary, Bad faith, or Unconscionable Conduct (Counts I and II of Complaint)

In Counts I and II of the Complaint, Plaintiffs allege Defendant violated S.C. Code Ann. §§ 56-15-40(1) and(3)(d) through its actions in connection with the Joe Gibson

---

are persuasive authority and not controlling law).

advertising scheme which adversely affected Plaintiffs' ability to open a new Suzuki dealership and had a poisoning effect on consumers. Defendant contends that Plaintiffs were not a dealer at the time the Joe Gibson advertising took place.

Section 56-15-40(1) provides it is unlawful for any distributor or motor vehicle dealer "to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of the parties or to the public."  S.C. Code Ann. § 56-15-40(1).  Section 56-15-40(3)(d) provides that it is unlawful for a distributor "to resort to or use any false or misleading advertisement in connection with his business."  S.C. Ann. § 56-15-40(3)(d).

Reviewing the Complaint, Plaintiffs allege Defendant urged Joe Gibson to retain Christopher Advertising Group ("CAG") because CAG had prior success in boosting sales through advertising featuring no or low money down and no or low monthly payments. (Compl. ¶ 11).  Plaintiffs allege Joe Gibson hired CAG in the spring of 2007 and the Drive for Life advertising began thereafter.  Plaintiffs allege the Drive for Life advertising was implemented at Defendant's direction and expense and Defendant knew, or should have known, that the marketing campaign was deceptive, misleading, and/or fraudulent. (Compl.  ¶ 21). Plaintiffs allege that Defendant pre-approved all advertisements run in the Greenville/Spartanburg area which were developed by CAG.[3]

Plaintiffs allege Defendant's alleged misconduct adversely affected their ability to open a new Suzuki dealership and had a poisoning effect on consumers.  (Compl. ¶ 36). Plaintiffs specifically allege that as a result of Defendant's alleged misconduct, they were

_____

[3]Defendant also contends it is implausible that it would act in a manner which would adversely effect Suzuki's own franchisees.  However, there would never be any false or deceptive advertising if companies did not believe that they could derive some benefit from deceptive advertising.

10

unable to open the new dealership. (Compl. ¶ 37). The Plaintiffs' allegations as currently pled are problematic because it is undisputed that Plaintiffs did open a Suzuki dealership. (Dkt. # 13-6). Further, Plaintiffs allege that they discovered the effects from the Joe Gibson advertising in 2009, when Plaintiffs allege that they were unable to obtain a $500,000 line of floor plan credit. And yet they entered into the dealership agreement in February 2010 and they had obtained a $500,000 line of credit.[4] Plaintiffs also allege a loss of business reputation and goodwill and a diminution in the value of the Suzuki dealership. (Compl. ¶¶ 38-39). Although not entirely clear from the pleadings and arguments, it appears Plaintiffs may be referring to a building as Plaintiffs do not currently own a Suzuki dealership, but rather own a building which they cannot operate as a Suzuki dealership because they are not currently a Suzuki franchisee. (Compl. ¶¶ 29, 37-39).

As noted above, § 56-15-40(1) provides it is unlawful for any distributor or motor vehicle dealer "to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of the parties or to the public." Accepting Plaintiffs' allegations regarding the Joe Gibson advertising scheme as true for the purposes of this motion, Defendant has engaged in false or misleading advertising. However, the damage this has caused to the Plaintiffs has not been adequately pled. The allegations are confusing and contradictory to say the least. Based upon the foregoing, the court finds these claims as currently pled should be dismissed. Although somewhat doubtful of these claims, because it is not clear that amendment would be futile, the court will afford Plaintiffs an opportunity to amend these claims.

---

[4]Plaintiffs also allege, at some point, they were able to obtain a $2 million line of credit. (Compl. ¶ 8).

11

**2) Price Discrimination Claims (Counts III and IV of Complaint)**

In Counts III and IV of the Complaint, Plaintiffs allege price discrimination claims pursuant to S.C. Code Ann. § 56-15-40(3)(e) and (f) based upon Defendant's conduct related to the Joe Gibson advertising scheme. Defendant contends that Plaintiffs' price discrimination claims fail because Plaintiffs were never a Suzuki dealer at the same time as Joe Gibson. Defendant argues that Joe Gibson filed for bankruptcy on July 16, 2008, and ceased all dealership operations on August 1, 2008. (Answer ¶¶ 19, 27). Defendant contends Plaintiffs were not a Suzuki dealer until February 26, 2010. In their memorandum, Plaintiffs argue that based upon the four letters of intent signed in 2007, 2008, and 2009, they were a dealer under the Act.

Section 56-15-40(3)(e) and (f) provide, in pertinent part:

It shall be deemed a violation of paragraph (a) of § 56-15-30 for a manufacturer:
. . .

 (e) To offer to sell or to sell any new motor vehicle to any motor vehicle dealer at a lower actual price therefor than the actual price offered to any other motor vehicle dealer for the same model vehicle similarly equipped or to utilize any device including, but not limited to, sales promotion plans or programs which result in such lesser actual price. . . .

(f) To wilfully discriminate, either directly or indirectly, in price between different purchasers of a commodity of like grade or quality where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly or to injure or destroy the business of a competitor.

The Act defines dealer as "any person who sells or attempts to effect the sale of any motor vehicle." S.C. Code Ann. § 56-15-10 (h). Pursuant to the express terms of the letters of intent entered into at the time of the Joe Gibson advertising scheme, Plaintiffs had not been appointed as a dealer and, therefore, could not have sold or attempted to sell Suzuki vehicles. As Plaintiff was not a dealer at that time, Plaintiffs could not have been selling or attempting to effect the sale of any vehicles. Plaintiffs were merely

12

attempting to obtain a franchise and become a dealer in the future. The court finds these claims should be dismissed with prejudice and Plaintiffs' request to amend as to these claims is denied as any amendment would be futile.

### 3)  Unfair Competition Claim (Count V of Complaint)

In Count V of the Complaint, Plaintiffs allege an unfair competition claim pursuant to § 56-15-45(b). Plaintiffs allege that Defendant was involved in the Joe Gibson's advertising campaign and this constituted "preferential treatment to Joe Gibson" which "destroyed the business opportunity of the Plaintiffs" in violation of section 56-15-45(B). (Compl. ¶ 74).

Subsection 56-15-45 (B)(2) provides:

For purposes of this subsection, a manufacturer or franchisor or any parent, affiliate, wholly or partially owned subsidiary, officer, or representative of a manufacturer or franchisor is conclusively presumed to be competing unfairly if it gives preferential treatment to a dealer or dealership in which an interest is directly or indirectly owned, operated, or controlled by the manufacturer or franchisor or any partner, affiliate, wholly or partially owned subsidiary, officer, or representative of the manufacturer or franchisor, expressly including, but not limited to, preferential treatment regarding the direct or indirect cost of vehicles or parts, the availability or allocation of vehicles or parts, the availability or allocation of special or program vehicles, the provision of service and service support, the availability of or participation in special programs, the administration of warranty policy, the availability or allocation of factory rebates, or the availability and use of after warranty adjustments, advertising, floor planning, or financing or financing programs.

Defendant contends that in order to establish a violation of section 56-15-45(B), Plaintiffs must establish that Defendant unfairly competed by giving preferential treatment to a dealership it owned, operated, or controlled and there is no allegation that Joe Gibson was owned, operated, or controlled by Defendant. Plaintiffs did not respond to this specific argument.  Reviewing the Complaint, the court finds that while Plaintiffs allege Defendant gave preferential treatment to Joe Gibson (Compl. ¶ 74), there are no

13

allegations that Joe Gibson was owned, operated, or controlled by Defendant. As there are no allegations regarding a necessary element of this claim, the court dismisses this claim. Furthermore, as discussed above, at the time of the Joe Gibson advertising scheme, Plaintiffs were not operating as a dealership. Because any attempt by Plaintiffs to cure this deficiency through amendment would be futile, this claim is dismissed with prejudice.

**4) Termination or Failure to Renew Agreement without Cause (Count VI of Complaint)**

In Count IV of the Complaint, Plaintiffs allege that Defendant violated S.C. Code Ann.§ 56-15-90 by not renewing or terminating a dealership agreement without cause. Defendant contends that this claim fails because Plaintiffs had already sold their dealership in May 2010 and did not have a Suzuki franchise or dealership at the time Defendant instituted its $ 1 million floor plan requirement in 2011. In response, Plaintiffs argue that the four letters of intent and their actions rendered them a "franchise" under the statute.

Section 56-15-90 provides:

Anything to the contrary notwithstanding, it shall be unlawful for the manufacturer, wholesaler, distributor, or franchisor, without due cause, to fail to renew on terms then equally available to all its motor vehicle dealers of the same line-make, to terminate a franchise or to unreasonably restrict the transfer of a franchise unless the franchisee shall receive fair and reasonable compensation for the value of the business and compensation for its dealership facilities or location as provided in subsection (C).

S.C. Code Ann. § 56-15-90.

Section 56-15-10(A)(I) defines the term franchise as follows:

"Franchise," an oral or written arrangement for a definite or indefinite period in which a manufacturer, distributor or wholesaler grants to a motor vehicle dealer a license to use a trade name, service mark, or related characteristic, and in which there is a community of interest in the marketing

14

of motor vehicles or services related thereto at wholesale, retail, leasing or otherwise.

S.C. Code Ann. § 56-15-10(A)(l).

Although Plaintiffs entered into a dealer agreement with Defendant in February 2010, they subsequently sold the franchise to BSAC Suzuki on May 20, 2010. (Answer ¶ 29). Plaintiffs were required to have an increased line of credit when they attempted to repurchase the dealership from BSAC Suzuki. (Answer ¶ 29). Plaintiffs contend that "the sale of the dealership in March of 2010 has no bearing on whether the statute applies and certainly has no bearing on a FRCP 12(c) ruling." (Pls.' Mem. Opp. Mot. ¶ 16).

Plaintiffs then state that they could have pled as follows:

Beginning in 2007 with the signing of the first letter of intent on August 24, 2007 and continuing for the next three years with successive letters of intent dated April 18, 2008, December 11, 2008, June 4, 2009 and a dealer agreement on May 26, 2010, (sic) Suzuki required a $500,000 floor plan line of credit. In 2009, Plaintiffs realized that the Defendant actions had poisoned the Greer South Carolina market with the Joe Gibson advertising when financial institutions refused to give them a floor plan line of credit. Plaintiffs were repeatedly told by institutions such as GMAC, Sun Trust, BB & T and Fifth/Third Bank that they would not offer a floor plan line of credit for Suzuki cars due to the Greer South Carolina market problems with regards to Suzuki. Due to the inability to get a floor plan line of credit, Plaintiffs then decided to enter into a buy sell agreement with BSAC Suzuki in March of 2010. BSAC Suzuki was owned by Bill Jackson who had sufficient cash reserves to self-fund the floor plan line of credit. The buy sell agreement was entered into with the understanding that once Plaintiffs secured the floor plan line of credit BSAC Suzuki would sell the dealership back to Plaintiffs. In June of 2010 BSAC Suzuki got approval as a Suzuki dealer. Per the operating agreement between Plaintiffs and BSAC Suzuki Plaintiffs managed the dealership between July 2011 and October 2011. Sometime in the summer of 2010 Plaintiffs obtained a $500,000 floor plan line of credit. Defendant then told them a $1 million floor plan line of credit was required. In August of 2011 Plaintiffs obtained the required $1 million dollar floor plan line of credit from Ally bank. Plaintiff made Defendants aware of this as did BSAC Suzuki. The Defendant inexplicably turned down that floor plan line of credit. Without approval of Defendant the Plaintiffs dealership was not renewed and/or was effectively terminated.

However, FRCP 12(c) does not require Plaintiffs to plead with that much specificity.

15

(Pls.' Mem. Opp. Mot. ¶ 16).[5]

The court is confused by Plaintiffs' argument that the sale of the dealership had no bearing on whether this code section applies or the resolution of this motion. Once Plaintiffs sold the dealership to BASC, they were no longer a Suzuki franchisee subject to termination. Clearly, this effects whether this code section applies and thus whether this motion should be granted as to this claim.

Moreover, the language in this section regarding unreasonable restrictions on transfers of franchises clearly is meant to protect a current franchisee who is unable to sell a franchise because the franchisor unreasonably refuses to approve a transfer. Plaintiffs were not a franchisee when Suzuki refused to approve the transfer from BASC to Plaintiffs. Furthermore, at that point, Plaintiffs also were not a potential franchisee which Plaintiffs argue would be included under the definition of franchise as they had not been re-offered a franchise by Defendant. Any prior offers Defendant made to Plaintiffs to become a franchisee evidenced by the four letters of intent were fulfilled when Plaintiffs did, in fact, become a dealer or franchisee in February 2010. Accordingly, this claim is dismissed with prejudice.

### C. Common Law Claims[6]

---

[5] The court notes that clearly the reference to the date of the dealership agreement should be February 26, 2010, rather than May 26, 2010. (Dkt. # 13-6).

[6] In considering Defendant's Motion for Judgment on the Pleadings, the court notes, that in an action based upon diversity of citizenship, as here, the district court must "apply the substantive law of the state in which it sits, including the state's choice of law rules." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599–600 (4th Cir. 2004)(internal citation omitted). In South Carolina, "[u]nless the parties agree to a different rule, the validity and interpretation of a contract is ordinarily to be determined by the law of the state in which the contract was made." *Unison Ins. Co. v. Hertz Rental Corp.*, 436 S.E.2d 182, 184 (S.C.App.1993). "[I]f the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law." *Nucor*

Defendant contends Plaintiffs' common law claims for unjust enrichment, negligence, breach of contract, and breach of contract accompanied by a fraudulent act fail as a matter of law because 1) they are barred by the statute of limitations and 2) many of the claims fail to state a viable cause of action.

### 1) Statute of Limitations

Defendant contends that Plaintiffs' common law claims based on Joe Gibson's advertisements are barred by the statute of limitations because these advertisements aired in 2007-2008. The parties agree that the applicable statute of limitations as to Plaintiffs' common law claims is three years. *See* S.C. Code Ann. §§ 15-3-530(1), (5) (establishing a three-year statute of limitations for negligence and contract-based claims). Plaintiffs filed this action on December 13, 2011. (Compl.) Defendant contends Joe Gibson filed for bankruptcy on July 16, 2008, and stopped all business on August 1, 2008, and, therefore, could not have participated in any further advertisements after August 1, 2008. Further, based upon the allegations in the Complaint regarding the publicity of this situation, Defendant contends the discovery rule would not aid Plaintiffs as they knew or should have known of the facts regarding Joe Gibson advertising before August 2008. Plaintiffs respond that they did not know of the effects of the advertising until later.

The statute of limitations is an affirmative defense that must be raised and proved by the defendant. Fed.R.Civ.P. 8(c); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). "[I]n the relatively rare circumstances where facts sufficient to rule

---

*Corp. v. Bell*, 482 F.Supp.2d 714, 728 (D.S.C. 2007). While the letters of intent are silent as to a choice of law, the dealership agreement has a provision stating that California law will control. (Dkt. # 13-6 ¶ 16.9). However, as the court declines to reach the statute of limitations issue, there is no need determine what California's statute of limitations is on the breach of contract claims.

17

on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman*, 494 F .3d at 464. Thus, a court may dismiss a complaint as time barred only if the complaint "sets forth on its face the facts necessary to conclude that plaintiff's claims are barred by the statute of limitations." *Id.* In this case, Plaintiffs assert that discovery rule applies. *See Barr v. City of Rock Hill*, 500 S.E.2d 157 (S.C. Ct.App.1998) (discovery rule provides exception to general rule and tolls statute of limitations until person knows or by exercise of reasonable diligence should know he has cause of action). The argument by the Defendant that Plaintiffs are not entitled to the benefit of the discovery rule cannot be determined on the present pleadings. Accordingly, the court declines to find these claims barred by the statute of limitations at this stage of the litigation.

### 2) Claim for Unjust Enrichment  (Count VII of Complaint)

Defendant contends Plaintiffs' unjust enrichment claim fails as a matter of law.  To recover for unjust enrichment a plaintiff must show: "(1) that he conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." *Sauner v. Public Serv. Auth. of S.C.*, 581 S.E.2d 161, 167 (S.C. 2003).

Defendant contends that Plaintiffs have failed to identify any benefit they allegedly conferred on it. Plaintiffs allege Defendant was enriched by its alleged involvement in the Joe Gibson advertising scheme because hundreds of Suzuki cars were sold by Joe Gibson.  (Compl. ¶ 92). In response, Defendant contends any benefit to Defendant from an alleged increase in sales would have been conferred by Joe Gibson's customers, not by Plaintiffs.  Reviewing Plaintiffs' allegations as to this claim as it is currently pled,

18

Plaintiffs' claim fails as they do not allege that they conferred a non-gratuitous benefit on Defendant.  Again although somewhat doubtful of this claim, because it is not clear that amendment would be futile, the court will afford Plaintiffs an opportunity to amend this claim.   Accordingly, this claim should be dismissed without prejudice.

### 3) Negligence (Count VIII of the Complaint)

Although Defendant contends this claim is barred by the statute of limitation as discussed above, Defendant does not address the merits of this claim or raise another ground for its dismissal.  Accordingly, the court declines to dismiss this claim.

### 4) Breach of Contract Claims  (Counts IX and X of Complaint)

Defendant contends Plaintiffs' claims for breach of contract and breach of contract accompanied by a fraudulent act fail because Plaintiffs did not have a contract with Defendant at the time of the alleged breach.  Plaintiffs allege Defendant breached the dealer agreement because its actions in regard to the marketing and advertising campaign with Joe Gibson. (Compl. ¶¶ 110, 115). Defendant contends that at the time of Joe Gibson's advertisement campaign, it did not have a dealer agreement with Plaintiffs, as the parties did not enter into a dealership agreement until February 26, 2010, and the advertisements ceased when Joe Gibson went out of business on August 1, 2008. (Answer ¶¶ 19, 29).

Plaintiffs also claim Defendant breached the dealer agreement by effectively terminating the franchise when it increased the amount of the required floor plan line of credit. (Compl. ¶¶ 110, 115). Defendant again argues Plaintiffs did not have any dealership agreement with it at the time it increased its floor plan requirement. In response to this argument, Plaintiffs contend that Defendant fails to recognize that their breach of contract claims are not solely based on the dealership agreement.  (Pls.' Mem.

19

Opp. Mot. ¶ 34).  Plaintiffs contend that these claims include alleged breaches of the four letters of intent.  *Id.*

First, Plaintiffs have not alleged any facts which would support a breach of contract claim in regard to the letters of intent or the dealership agreement.  In the letters of intent, Defendant stated that it tentatively approved Plaintiffs for a Suzuki dealership, but the letters specifically did not give Plaintiffs any rights to act as a Suzuki dealer.  (Dkt. # 13-1; 13-2; 13-3; 13-4)   Further, other than in the first letter of intent, the letters of intent also specifically stated each letter supersedes any prior letter of intent.  The fourth and final letter of intent dated June 4, 2009, provided that Plaintiffs must have a $500,000 floor plan line of credit and Defendant reserved the right to change the minimum required floor plan line of credit at its sole discretion.  (Dkt. # 13-4 ¶ 6).  However, Defendant did not increase the minimum floor plan required and the  parties entered into a dealership agreement on February 26, 2010, with Plaintiffs agreeing to obtain and maintain a $500,000 line of credit. (Dkt. # 13-6  ¶ 6).   There is evidence Plaintiffs had obtained this line of credit on February 24, 2010.  (Dkt. # 13-5).  Thereafter, on March 31, 2012, Plaintiffs sold the dealership to BASC.  (Dkt. # 13-7).  Plaintiffs attempted to buy back the dealership and entered into an agreement with BASC on May 27, 2011, which was contingent on approval of the purchase by Defendant.  (Dkt. # 13-8).

Moreover, as to the letters of intent, the court notes that preliminary negotiations and agreements to agree do not amount to a contract in South Carolina. *Blanton Enterprises, Inc. v. Burger King Corp.*, 680 F.Supp. 753, 770 n. 20  (D.S.C. 1988)(citing *Craven v. Williams*, 302 F.Supp. 885 (D.S.C.1969) (holding preliminary negotiations not intended or represented to be the final agreement of the parties do not support a right to specific performance);  *Holliday v. Pegram*, 71 S.E. 367 (S.C. 1911) (finding no contract

20

where defendant promised to make a contract or arrange an agreement at a future date)). In *Bugg v. Bugg*, 249 S.E.2d 505, 507 (S.C. 1978), the South Carolina Supreme Court held that "[w]hether the parties to an oral or informal agreement [become] bound prior to the execution of a contemplated formal writing is a question depending largely upon their intention."  "[W]here it is determined that the parties intended not to be bound until the written contract is executed, no valid and enforceable obligation will be held to arise." *Id.* Moreover, the dealership agreement provides that it is the sole and entire agreement between the parties and that it "cancels and supersedes all previous agreements between the parties relating to this subject matter covered herein."  (Dkt. # 13-6 ¶ 16.8). Based on the foregoing, the court concludes that the letters of intent cannot be the basis for any breach of contract claim and further that Defendant did not breach the dealership agreement by requiring an increased credit line after the dealership had been transferred to BASC.  Accordingly, the breach of contract claims are dismissed with prejudice.

## D. Amendment

Plaintiffs seek to amend their complaint if the court finds any claim has not been sufficiently pled.  Pursuant to Federal Rule of Civil Procedure 15(a)(2), a court should "freely give leave [to amend a pleading] when justice so requires." Fed.R.Civ.P. 15(a)(2). Leave to amend a pleading should be denied only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir.1999) (citation and internal quotation marks omitted). The standard for futility is the same as a motion to dismiss under Fed.R.Civ.P. 12(b)(6).  *See Perkins v. United States,* 55 F.3d 910, 917 (4th Cir.1995) (amendment is futile where the amended complaint would still fail to survive a motion to dismiss).

21

First, the court notes that Plaintiffs did not file a motion with the court, but requested leave to amend in the last three paragraphs of their response to Defendant's Motion to Dismiss. Plaintiffs' request fails to qualify as a motion for leave to amend. *See also Woods v. Boeing Co.*, 841 F.Supp.2d 925 (D.S.C. 2012)(citing *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) ("[W]e cannot say that the district court abused its discretion by declining to grant a motion that was never properly made."); *United States ex rel. Williams v. Martin–Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C.Cir. 2004) ("While Federal Rule 15(a) provides that leave to amend shall be freely given when justice so requires, a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion with the contemplation of Rule 15(a).")).

Notwithstanding, the absence of a proper motion, the court will address Plaintiffs' request because ordinarily a dismissal under Rule 12(b)(6) "is not final or on the merits." *Ostrzenski v. Seigel*, 177 F.3d 245, 252 (4th Cir.1999). Although the preference for deciding cases on the merits generally weighs in favor of allowing plaintiffs to amend their complaint, "[a]mendment should be refused only if it appears to a certainty that plaintiff cannot state a claim." *Id.* at 253. This is particularly true where the defects in the complaint are formal in nature. *Id.* Where amendment would be futile or prejudicial to the defendants, however, courts have discretion to deny amendment and dismiss a plaintiff's claim. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, justice does not require the court to grant Plaintiff leave to amend as to some of their claims. The problem with some of the claims is not mere formal defects, such as those addressed in *Ostrzenski*. Rather the defects as to some of Plaintiffs' claims are both formal and material and the facts in the instant case as elucidated by the

22

parties reveal no possible basis upon which Plaintiffs might seek to recover from Defendant on those claims. As such, the court finds that it would be futile to allow Plaintiffs to amend the claims raised in Counts III, IV, V, VI, IX, and X . Plaintiffs are granted leave to file an amended complaint only as to the claims for arbitrary, bad faith, or unconscionable conduct under the Act (Counts I and II in  Complaint), and the common law claims of negligence and unjust enrichment (Counts VII and VIII).

### IV.  Conclusion

For the foregoing reasons, Defendant's Motion for Judgment on the Pleading (Dkt. # 33) is **GRANTED in part and DENIED in part**..  Plaintiffs have fifteen days (15) from the date of this Order to file an amended complaint consistent with this Order.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

August 10, 2012
Anderson, South Carolina