UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| JAMES BROCKMAN, JR., WADE HAMPTON OF GREER, L.L.C. and SUZUKI OF GREER, L.L.C.<br><br>　　Plaintiffs,<br><br>V.<br><br>AMERICAN SUZUKI MOTOR CORPORATION<br><br><br><br>　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No: 6:11-3381- TMC |

**<u>PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

　　NOW COMES, Plaintiffs James Brockman, Jr., ("Plaintiff Brockman"), Wade Hampton of Greer, L.L.C. ("Plaintiff Wade Hampton LLC") and Suzuki of Greer, L.L.C. ("Plaintiff Suzuki of Greer LLC") complaining of Defendant American Suzuki Motor Corporation ("Suzuki" or "Defendant Suzuki") and for cause of action would respectfully show the Court as follows:

**I.
<u>PARTIES</u>**

　　1.　Plaintiff James Brockman, Jr., is an individual residing in South Carolina and he may be served through undersigned counsel.

　　2.　Plaintiff Wade Hampton of Greer, L.L.C., is a South Carolina Limited Liability Company with its principal place of business in the state of South Carolina. It may be served through undersigned counsel.

3. Plaintiff Suzuki of Greer, L.L.C., is a South Carolina Limited Liability Company with its principal place of business in the state of South Carolina. It may be served through undersigned counsel.

4. Defendant American Suzuki Motor Corporation is a California corporation that does business in South Carolina and who has previously made an appearance in this case and may be served through its counsel of record.

## II.
## JURISDICTION

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

## III.
## VENUE

6. Venue for this action is predicated upon 28 U.S.C. §1391(a)(2) and 28 U.S.C. §1391(b)(2).

## IV.
## FACTUAL BACKGROUND

7. As discussed in more detail below, this case stems from the false or misleading advertising campaign run by Defendant Suzuki and the crushing effect it had on Plaintiff Brockman's attempts to successfully operate a viable Suzuki dealership in his home town of Greer, located in the Greenville/Spartanburg area of South Carolina.

8. Suzuki's false or misleading advertising campaign fully poisoned and destroyed the market for Suzuki vehicles and alienated Suzuki's customer base in the Greenville/Spartanburg area. As a direct result of these actions Plaintiffs suffered significant damages comprised of, among other things: (1) the monies Plaintiffs expended in buying land and constructing a brand new (and now vacant) dealership facility built to Suzuki's required and exacting specifications.

Due to the specificity of Suzuki's building requirements this land and building are now essentially unsellable to any prospective non-Suzuki dealer. Further, the land and building are not sellable to a Suzuki dealer because the market has been destroyed by Suzuki's acts; (2) a significant note payable on the loan that Plaintiffs obtained to buy the land and build the Suzuki dealership facility; (3) lost profits and the lost opportunity to successfully operate a viable Suzuki dealership and (4) loss of business reputation and goodwill.

### Plaintiff Brockman undertakes necessary steps to acquire a Suzuki franchise and operate a Suzuki dealership in his home town.

9. In 2007, 2008 and 2009 Plaintiff Brockman signed Letters of Intent with Suzuki for a franchise in Greer, South Carolina. Based upon these representations Plaintiff Brockman formed two entities: (a) Plaintiff Wade Hampton in Greer, L.L.C.[1] was formed to purchase land, enter into a lease for additional land and to construct a dealership facility that had to be built to Suzuki exact specifications; (b) Plaintiff Suzuki of Greer, L.L.C. was formed to be the entity that would eventually operate the Suzuki dealership once the land and facility were purchased and built.

10. Plaintiffs did in fact buy land, entered into a lease for some additional land and obtained a $3,000,000 dollar loan for the construction of a Suzuki dealership facility built to exacting Suzuki specifications. Plaintiffs also obtained a $2,000,000 floor plan line of credit as required by Suzuki.

11. Suzuki granted Plaintiffs the right to engage in the business of offering, selling or otherwise distributing Suzuki vehicles and/or services under a marketing plan or system prescribed by Suzuki. The operation of Plaintiffs business was essentially and substantially

---

[1] Plaintiff Wade Hampton LLC is owned and operated by Plaintiff Brockman and was the entity that Plaintiff Brockman used to lease the land and spend the money to build the Suzuki dealership to Suzuki's specifications.

PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT                                                    PAGE 3

associated with Suzuki's trademarks, service marks, trade names, logotypes, advertising and/or other commercial symbols.

## Suzuki Engages in False and Misleading Advertising

12. At or around the time Plaintiffs were obtaining the loan to purchase the land and build the dealership facility, Suzuki successfully encouraged Joe Gibson's Autoworld, a local Suzuki dealership in a neighboring town of Greenville/Spartanburg, to use a no or low money down, no or low monthly payment sales strategy and "approved" marketing and advertising relating thereto.

13. More specifically, in or about the spring of 2007, Suzuki urged Joe Gibson's Autoworld to retain the Christopher Advertising Group (hereinafter "CAG") because of CAG's success in boosting sales through advertisements that featured new Suzuki's for no or low money down and no or low monthly payments.

14. In or about spring of 2007, Joe Gibson's Autoworld followed Suzuki's advice and started using CAG's advertising services.

15. In or about spring of 2007, Joe Gibson's Autoworld began running numerous television, radio and direct mail promotional advertisements created by CAG in the Greenville/Spartanburg, South Carolina market.

16. The radio, television and direct mail promotions advertised various "Drive a Suzuki" programs or "Drive for Life" programs.

17. The radio, television and direct mail promotions included advertisements for programs that would (a) allow consumers to purchase and drive a new Suzuki with the consumer making no payments on the vehicle for life; or (b) allow consumers to purchase and drive a new Suzuki for low fixed payments of amounts ranging from $29 to $99.

18. The promotions represented that for 10 to 12 months consumers would receive rebate checks from Joe Gibson's Autoworld to help cover the costs of monthly payments.

19. The promotions also represented that once the 10 to 12 month rebate period had expired, consumers could trade in their Suzuki's for new Suzuki's from Joe Gibson's Autoworld.

20. Consumers were informed that they would receive additional rebate checks once they traded in their Suzuki's for new Suzuki's from Joe Gibson's Autoworld.

21. These advertisements aired on both television and radio stations in the Greenville/Spartanburg, South Carolina market thousands of time in 2007 and 2008.

22. These advertisements were developed by CAG, the advertising group recommended by Suzuki.

23. These advertisements were developed and implemented at the direction and expense of Suzuki and Suzuki knew, or should have known, that the marketing campaign was deceptive, misleading and/or fraudulent.

24. Based on the advertisements, consumers visited Joe Gibson's Autoworld locations to inquire about these "Drive a Suzuki" and "Drive for Life" programs. Hundreds, most likely thousands of customers entered into transactions with Joe Gibson's Autoworld to purchase new Suzuki vehicles during the period the advertisements aired.

25. Consumers were advised they would not be responsible for any of their loan obligations incurred in purchasing new Suzuki's as part of the promotional offer.

26. Contrary to the "for life" language of the promotional offers, the promotional term was for 10 months to one year, after which time the consumer would need to reapply for the offer. Ten months to one year after taking advantage of the promotional offer, consumers were unable to obtain financing or refinancing. Consumers were then required to make full payments on the vehicles, and they were given no recourse under the terms of the promotion.

27. Contrary to the promotional offers for no or low payments, full monthly payments for some consumers were as high as $700.00 or more, especially if the consumer purchased more than one vehicle because of the attractiveness of the offer. Many consumers continued making full payments on the vehicles at rates that well exceed the promotional offer. Other consumers had their vehicles repossessed for non-payment.

28. Suzuki pre-approved all CAG-developed advertisements run in the Greenville/Spartanburg, South Carolina market.

### Fallout from the Suzuki Advertising Campaign

29. Many consumers had their vehicles repossessed or could not get service for their vehicles. The South Carolina Attorney General got involved in a highly publicized investigation. Joe Gibson's Autoworld filed for bankruptcy and Joe Gibson faced criminal prosecution. The local publicity regarding the fallout from the Suzuki advertising campaign was intense and severe. Financial institutions took careful note.

30. The above-described events along with extensive, negative local media coverage regarding the Suzuki advertising campaign, the resulting consumer complaints, and the conduct of Suzuki poisoned and destroyed the market for Suzuki vehicles in the Greenville/Spartanburg, South Carolina market.

31. As a result, once Plaintiffs had completed the construction of their Suzuki dealership facility they were unable to establish a viable Suzuki dealership. The Plaintiffs are now left with a brand new building and land that is practically worthless for any purpose since it is built to Suzuki specifications. Further they cannot sell to another Suzuki dealer because no one will enter the Greenville/Spartanburg, South Carolina market due to the negativity created by the Suzuki advertising campaign.

## V.
## CAUSES OF ACTION

32. The State of South Carolina has declared that unfair methods of competition and unfair or deceptive acts or practices as between motor vehicle manufacturers, distributors and dealers are unlawful and have codified this declaration at SC Code Ann. 56-15-30.  The specific unlawful acts are defined in SC Code Ann. 56-15-40. Suzuki is a motor vehicle "franchiser" as that term is defined at SC Code Ann. 56-15-10(j) and Plaintiffs Brockman and Suzuki of Greer LLC are "franchisees" as that term is defined at SC Code Ann. 56-15-10(k).  Plaintiffs Brockman and Suzuki of Greer LLC are therefore permitted by SC Code Ann. 56-15-30; SC Code Ann. 56-15-40 and 56-15-110 to bring a civil action against Suzuki for engaging in unlawful practices under the law.  Plaintiffs Brockman and Suzuki of Greer LLC allege that Suzuki has violated specific sections of this law as follows:

## COUNT I

### Defendant Suzuki Violated South Carolina Code of Law § 56-15-40(1)

33. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 32 as if set forth fully herein.

34. Pursuant to SC Code Ann. 56-15-40(1), it is unlawful for a motor vehicle franchiser to engage in any conduct which is arbitrary, in bad faith or unconscionable and which causes damages to any of the parties or to the public.

35. Suzuki engaged in prohibited conduct by allowing, encouraging, enabling, facilitating, approving and/or participating in deceptive, misleading, unfair and/or fraudulent marketing and advertising campaign, which caused damage to Plaintiffs and the Suzuki brand name in the greater Greenville/Spartanburg market.

36. Suzuki knew, or should have known, that this marketing campaign was deceptive, misleading, unfair or fraudulent based upon the consumer complaints and lawsuits that arose out of Joe Gibson Autoworld's use of similar advertisements in the Greenville/Spartanburg market, through its knowledge of advertisements used throughout the market, and based upon its own knowledge of what constitutes misleading, unfair, deceptive and/or fraudulent advertising.

37. Suzuki allowed, encouraged, enabled, facilitated, approved and/or, participated in the marketing and advertising campaign without regard to the deceptive, misleading, unfair and/or fraudulent nature of the advertisements. Suzuki knew or should have known the effect those advertisements would have on the Plaintiffs ability to successfully operate the new dealership as well as the poisoning effect it would have on consumers in the greater Greenville/Spartanburg market. This conduct was arbitrary, in bad faith and unconscionable.

38. As a direct and proximate result of Suzuki's false or misleading advertising, the Plaintiffs have been substantially damaged. For example:

> a. Plaintiffs have expended significant sums of time, effort and money buying land, preparing for and actually constructing a Suzuki dealership facility. As a direct and proximate result of Suzuki's false and/or misleading advertising, however, Plaintiffs are now left with a brand new vacant dealership building and land that is practically worthless for any purpose since it is built to Suzuki's exacting specifications. Further Plaintiffs cannot sell to another Suzuki dealer because no one will enter the Greenville/Spartanburg, South Carolina market due to the negativity created by the Suzuki advertising campaign. In this regard, as a direct and proximate result of Suzuki's false and/or misleading advertising,

      Plaintiffs make payments on the note that was obtained solely to purchase the land and build the Suzuki facility without being afforded the opportunity to generate revenue operating a viable Suzuki dealership.

b. Plaintiff Brockman and his family have been in the motor vehicle business in the Greenville/Spartanburg area for over 25 years. Mr. Brockman's association with the Suzuki dealership has caused him to suffer a loss of business reputation and goodwill. This loss of business reputation and goodwill is as a direct and proximate result of Suzuki's false or misleading advertising and has caused and will continue to cause the Plaintiffs to expend significant sums to try and recoup the money spent establishing the Suzuki dealership.

c. As a direct and proximate result of Suzuki's false and/or misleading advertising, Plaintiffs have suffered lost revenue and profits.

39. As a direct and proximate result of Suzuki's unlawful violations, the Plaintiffs have sustained actual damages in excess of $4,000,000. Pursuant to SC Code Ann. 56-15-110(1), Plaintiffs are entitled to double the actual damages.

40. Suzuki's violations were and are malicious, justifying imposition of punitive damages pursuant to SC Code Ann. 56-15-110(3) to deter Suzuki and others similarly situated from the same or similar conduct in the future.

## COUNT II

### Defendant Suzuki Violated of South Carolina Code of Law § 56-15-40(3)(d)

41. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 40 as if set forth fully herein.

42. Pursuant to SC Code Ann. 56-15-40(3)(d), it is unlawful for a franchiser to resort to or use any false or misleading advertisement in connection with his business as such manufacturer, distributor, wholesaler, distributor branch or division, factory branch or division, or wholesale branch or division, or officer, agent or other representative thereof.

43. Suzuki's marketing and advertising campaign was false and misleading which caused damage to Plaintiffs because they spent the money to buy land and build a Suzuki dealership facility and never had a reasonable opportunity to operate a viable Suzuki dealership in the greater Greenville/Spartanburg market.

44. Suzuki knew, or should have known, that this marketing campaign was false and misleading based upon the consumer complaints and lawsuits that arose out of Joe Gibson Autoworld's use of similar advertisements in the Greenville/Spartanburg market, through its knowledge of advertisements used throughout the market, and based upon its own knowledge of what constitutes misleading, unfair, deceptive and/or fraudulent advertising.

45. Suzuki allowed, encouraged, enabled, facilitated, approved and/or, participated in the false and misleading marketing and advertising campaign. Suzuki knew or should have known the effect those advertisements would have on the Plaintiffs' ability to operate a viable and successful Suzuki dealership as well as the effect it would have on consumers in the greater Greenville/Spartanburg market.

46. As a direct and proximate result of Suzuki's unlawful practices, the Plaintiffs are stuck with a worthless facility and were effectively prevented from being able to establish a viable Suzuki dealership.

47. As a direct and proximate result of Suzuki's false and/or misleading advertising, the Plaintiffs have been substantially damaged. For example:

a. Plaintiffs have expended significant sums of time effort and money buying land. preparing for and actually constructing a Suzuki dealership facility. As a direct and proximate result of Suzuki's false and/or misleading advertising, however, Plaintiffs are now left with a brand new vacant dealership building and land that is practically worthless for any purpose since it is built to Suzuki's exacting specifications.  Further Plaintiffs cannot sell to another Suzuki dealer because no one will enter the Greenville/Spartanburg, South Carolina market due to the negativity created by the Suzuki advertising campaign.  In this regard, as a direct and proximate result of Suzuki's false and/or misleading advertising, Plaintiffs make payments on the note that was obtained solely to purchase the land and build the Suzuki facility without being afforded the opportunity to generate revenue operating a viable Suzuki dealership.

b. Plaintiff Brockman and his family have been in the motor vehicle business in the Greenville/Spartanburg area for over 25 years.  Mr. Brockman's association with the Suzuki dealership has caused him to suffer a loss of business reputation and goodwill.  This loss of business reputation and goodwill is as a direct and proximate result of Suzuki's false or misleading advertising and has caused and will continue to cause the Plaintiffs to expend significant sums to try and recoup the money spent establishing the Suzuki dealership.

c. As a direct and proximate result of Suzuki's false and/or misleading advertising, Plaintiffs have suffered lost revenue and profits.

48. As a direct and proximate result of Suzuki's unlawful violations, the Plaintiffs have sustained actual damages in excess of $4,000,000. Pursuant to SC Code Ann. 56-15-110(1), Plaintiffs are entitled to double the actual damages.

49. Suzuki's violations were and are malicious, justifying imposition of punitive damages pursuant to SC Code Ann. 56-15-110(3) to deter Suzuki and others similarly situated from the same or similar conduct in the future.

## COUNT III

### Negligence

50. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 49 as if set forth fully herein.

51. Suzuki voluntarily entered into a contractual relationship with Joe Gibson's Autoworld which set forth, among other things, the rights and responsibilities of Suzuki relating to the sales and service of Suzuki vehicles, advertisements and the promotion of customer satisfaction.

52. When Suzuki granted to Joe Gibson's Autoworld a license to use the Suzuki brand and the right to sell and service Suzuki vehicles, Suzuki had a duty to exercise reasonable care to ensure that Joe Gibson's Autoworld would conduct business in a manner that promotes customer confidence and satisfaction in the Suzuki brand so that the interests of other Suzuki franchisees in the Greenville/Spartanburg area whose business would be harmed by any unethical and/or unlawful actions of Joe Gibson's Autoworld would be protected and preserved.

53. Further, Suzuki's relationship with its motor vehicle franchisees is a statutorily-governed which establishes a duty of Suzuki to act in good faith in connection with its motor

vehicle franchisees and conduct its business in a way that will not cause damage to those franchisees.

54. Suzuki breached its duty by allowing, encouraging, enabling, facilitating, approving and/or participating in Joe Gibson's Autoworld misleading, deceptive, unfair and/or fraudulent marketing and advertising campaign. Suzuki knew or should have known that the advertisements approved and paid for by Suzuki were misleading, deceptive, unfair and/or fraudulent, and Suzuki was thereby negligent.

55. As a direct and proximate result of Suzuki's negligence, the Plaintiffs have been substantially damaged by expending significant sums of money to buy land and build a facility that had no realistic chance of becoming viable Suzuki dealership due to Suzuki's negligent acts.

56. As a direct and proximate result of Suzuki's negligence, the Plaintiffs have suffered a loss of business reputation and goodwill, which has caused the Plaintiffs to expend sums to try and recoup the money spent establishing the Suzuki dealership and will be forced to expend such sums in the future.

57. Suzuki's conduct was and is evil, outrageous, and without just cause and excuse, justifying imposition of punitive damages to deter Suzuki and others similarly situated from the same or similar conduct in the future.

## VI.
## CONDITIONS PRECEDENT

58. All conditions precedent for the claims above have been performed or have occurred.

## VII.
## ATTORNEYS' FEES

59. It has been necessary for Plaintiffs to retain services of the undersigned attorneys to represent their interests in this proceeding.

60. SC Code Ann. 56-15-110 permits Plaintiffs to recover their reasonably incurred costs of suit and attorneys' fees pursuant to Defendant's breach of SC Code Ann. 56-15-40 et al.

## VIII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be cited to appear and answer herein, and for the further relief set forth below:

(1)   Actual damages;

(2)   Twice the amount of actual damages as provided by SC Code Ann. 56-15-110

(2)   Exemplary damages;

(3)   For reasonable and necessary attorneys' fees, as well as those for steps on appeal;

(4)   Pre and post judgment interest;

(5)   For costs of suit; and

(6)   For such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

THE CLARDY LAW FIRM, P.A.

/s/ B. Allen Clardy, Jr.
**B. Allen Clardy, Jr.**
(Fed Bar No. 6515)
**David W. Hartman**
(Fed Bar No. 9274)

1001 E. Washington St.
Greenville, SC 29601
(864) 233-8888
(864) 233-8889 fax
Allen@theclardylawfirm.com
David@theclardylawfirm.com

LAW OFFICE OF MATTHEW BOBO, PLLC.


/s/ Matthew W. Bobo
**Matthew W. Bobo**
State Bar No. 24006860

3500 Hulen Street, Ste. 100
Fort Worth, Texas  76107
Telephone: (817) 529-0774
Facsimile: (817) 698-9401
mbobo@mwblawyer.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Plaintiffs' First Amended Complaint* has been served on counsel by ECF and/or certified mail, return receipt requested, in accordance with the Rules of Civil Procedure as set forth below, on this 24th day of August, 2012.

　/s/ B. Allen Clardy, Jr.
B. Allen Clardy, Jr.